Exhibit 2 to Defendant's 12(b)(1) Motion to Dismiss

Original GOT SPV LLC Agreement

GOT DISTRIBUTION SPV, LLC

LIMITED LIABILITY COMPANY AGREEMENT

This LIMITED LIABILITY COMPANY AGREEMENT (this "Agreement") of GOT Distribution SPV, LLC, a Delaware limited liability company (the "Company"), effective as of October 28, 2021, has been entered into by GOT Distribution, LLC, a Delaware limited liability company (the "Member"). The Member's address and limited liability company interest are as set forth on Schedule A hereto.

WHEREAS, the Company was formed in accordance with the Delaware Limited Liability Company Act (the "Act"), upon the execution and filing of the Certificate of Formation of the Company with the office of the Secretary of State of the State of Delaware on October 28, 2021; and

WHEREAS, the Member now desires to enter into this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, it is agreed as follows:

1. Business, Address and Registered Agent.

    (a) The Member hereby acknowledges that the Company has been formed under the Act for the purpose of engaging in any business of any kind necessary to, in connection with, related to or incidental to such purposes as the Member shall from time to time deem desirable.

    (b) The principal office of the Company for purposes of the Act shall be as determined by the Member from time to time.

    (c) The initial registered office of the Company for purposes of the Act shall be at as set forth in the formation documents or as determined by the Member from time to time.

2. Management. Except as otherwise provided herein or in the Act, the sole responsibility for managing the business and affairs of the Company shall be vested in the Member.

3. Officers.

    (a) Appointment of Officers; Term. Officers, including assistant and subordinate officers ("Officers"), may from time to time be appointed by the Member. The following individuals are hereby appointed as Officers as set forth below and shall continue as Officers until their successors are appointed by the Member:

| Name: | Title: |
|---|---|
| Glenford Carty | President |

(b) <u>Removal of Officers; Vacancies</u>. Any officer of the Company may be removed summarily with or without cause, at any time, by the Member. Vacancies may be filled by the Member.

(c) <u>Duties</u>. The Member hereby delegates authority to manage the day-to-day affairs of the Company to the Officers. The Member hereby authorized the Officers to take, or cause to be taken, such actions and to execute and deliver, or cause to be executed and delivered, for and in the name and on behalf of the Company, all documents and instruments as the Officers may deem necessary to advisable and in the best interests of the Company.

4. <u>Term</u>. The term of the Company shall be perpetual, except that the Company shall be dissolved upon the first to occur of any of the following events:

(a) The election of the Member to dissolve and terminate the Company;

(b) At any time there are no remaining members, except as may be avoided pursuant to §18-801(a)(4) of the Act;

(c) The entry of a decree of judicial dissolution under §18-802 of the Act; or

(d) Automatic cancellation of the Company's certificate of formation pursuant to §18-1108 of the Act.

5. <u>Capital</u>. The Member may contribute such capital, in cash or other property, as it so chooses in its sole discretion. No capital contributions shall be required unless the Member consents thereto in writing in its sole and absolute discretion.

6. <u>Bank Accounts</u>. The Member or, to the extent that there are any officers, any officer, including any assistant or subordinate officer, as may be authorized to do so in writing by the Member, is authorized to open commercial banking accounts for and in the name of the Company throughout the United States, at any time and from time to time, and to deposit to the credit of the Company in such banking accounts any monies, checks, drafts, orders or other commercial paper payable to the Company, and from time to time to withdraw all or any part of the funds on deposit in the name of the Company by check drawn in the name of the Company and signed by such officer.

7. <u>Voting of Shares</u>. The Member or any officer may from time to time appoint an attorney or attorneys or agent or agents of the Company, in the name and on behalf of the Company, to cast the vote which the Company may be entitled to cast as a stockholder or otherwise in any corporation, partnership, limited liability company, joint venture or any other entity, any of whose securities may be held by the Company, at meetings of the holders of the shares or other securities of such entity or to consent in writing to any action by any such entity. Such officer shall instruct the person or persons so appointed as to the manner of casting such votes or giving such consent and may execute or cause to be executed on behalf of the Company such written proxies, consents, waivers or other instruments as may be necessary or proper in the premises.

8. <u>Distributions</u>. Any cash or other property of the Company not required for the operation of the Company shall be distributable to the Member at such times and in such amounts as determined by the Member.

9. <u>Liquidation</u>. Any net proceeds from the sale, exchange or other disposition (including a disposition pursuant to foreclosure or deed in lieu of foreclosure) of the assets of the Company following the dissolution of the Company shall be distributed to the Member.

10. <u>Other Activities</u>. The Member may engage in or possess any interest in another venture or business of any nature or description, independently or with others.

11. <u>Tax Matters</u>. The Member may make on behalf of the Company any such filings as it deems necessary or appropriate to permit the Company to elect its classification for U.S. federal tax purposes.

12. <u>Tax Classification</u>. The Member intends that the Company be disregarded for U.S. federal income tax purposes as long as there is only one Member, and that if there is ever more than one Member or more than one owner of the Company as determined for U.S. federal income tax purposes, that the Company be classified as a partnership for U.S. federal income tax purposes and this Agreement shall be interpreted accordingly.

13. <u>Limited Liability</u>. The Member shall not have any personal obligation for any debts, obligations or liabilities of the Company, whether arising in contract, tort or otherwise, except as provided under the Act.

14. <u>Exculpation; Indemnification</u>.

(a) Except as otherwise provided by any written employment, consulting or similar agreement, if applicable, or unless otherwise expressly required by law, neither the Member nor any officer of the Company (including any former officer or member) (each such person referred to herein as a "<u>Covered Person</u>") shall have any liability to the Company or to any Member for any loss suffered by the Company or any member that arises out of any act or omission or alleged act or omission of the Covered Person in the Covered Person's capacity as a Covered Person to the extent the Covered Person acted in good faith and to the extent such course of conduct did not constitute bad faith, willful misconduct or gross negligence of the Covered Person. Each Covered Person shall be indemnified by the Company against any losses, judgments, liabilities, claims, damages, costs, expenses (including reasonable legal fees and other expenses actually incurred in investigating or defending against any such losses, judgments, liabilities or claims and expenses actually incurred enforcing this Agreement) and amounts paid in settlement of any claim (approved in advance and in good faith by the Member) sustained by any of them by reason of any act or omission or alleged act or omission in connection with the activities of the Company (including any subsidiaries thereof) unless there is a final judicial determination by a court of competent jurisdiction to which all rights of appeal have been exhausted or expired that the same were the result of bad faith, willful misconduct or gross negligence of the Covered Person. The Covered Person may rely in good faith upon the advice of legal counsel.

(b) To the extent available on commercially reasonable terms, the Company may purchase, at the Company's expense, insurance (including without limitation, liability

insurance policies and errors and omissions policies) to cover any liabilities covered by this Section 14 in such amount and with such deductibles as the Company may determine; provided, however, that the failure to obtain such insurance shall not affect the right to indemnification of any Covered Person. Any such insurance may extend beyond the termination of the Company for a commercially reasonable period. The Company shall be subrogated to the Covered Person's rights under such indemnification or insurance. If any Covered Person recovers any amounts in respect of any such liabilities from insurance coverage or any third party source, then such Covered Person shall, to the extent that such recovery is duplicative, reimburse the Company for any amounts previously paid to it by the Company in respect of such liabilities. The Company shall not incur the cost of that portion of any insurance, other than public liability insurance, which insures any party against any liability the indemnification of which is herein prohibited.

(c) The Company may, as determined in good faith by the Member, pay the legal fees and other expenses reasonably incurred by any Covered Person hereunder in connection with any proceeding in advance of the final disposition of such proceeding, so long as the Company receives a written undertaking, in form and content approved by the Company's counsel, by such Covered Person to repay the full amount advanced if there is a final judicial determination by a court of competent jurisdiction, as to which all rights of appeal have been exhausted or expired, that such Covered Person did not satisfy the standards which entitle it to indemnification pursuant to the terms of this Section 14.

(d) The right of indemnification hereby provided shall not be exclusive of, and shall not affect, any other rights to which any Covered Person may be entitled. Nothing contained in this Section 14 shall limit any lawful rights to indemnification existing independently of this Section 14.

(e) The indemnification rights provided by this Section 14 shall not be construed to increase the liability of the Member.

(f) The indemnification rights provided by this Section 14 shall inure to the benefit of the heirs, executors, administrators, successors and assigns of each Covered Person.

(g) The provisions of this Section 14 shall continue to afford protection to each Covered Person regardless of whether such Covered Person remains in the position or capacity pursuant to which such Covered Person became entitled to indemnification under this Section 14 and regardless of any subsequent amendment to this Agreement; provided, however, that no such amendment shall reduce or restrict the extent to which the indemnification provisions of this Section 14 apply to actions taken or omissions made or alleged actions taken or omissions made prior to the date of such amendment.

(h) If deemed appropriate or necessary by the Member, the Company may establish reserves, escrow accounts or similar accounts to fund its obligations under this Section 14.

(i) The provisions of this Section 14 shall survive the termination or dissolution of the Company.

-5-

15. <u>No Third Party Beneficiary</u>. No creditor or other third party having dealings with the Company shall have the right to enforce the right or obligation of the Member to make capital contributions or loans or to pursue any other right or remedy hereunder or at law or in equity, it being understood and agreed that the provisions of this Agreement shall be solely for the benefit of, and may be enforced solely by, the Member, the Covered Persons (to the extent granted herein) and the Company and their respective successors and permitted assigns.

[Signature page follows.]

IN WITNESS WHEREOF, the undersigned Member has executed this Limited Liability Company Agreement effective as of the date first set forth above.

<u>MEMBER</u>:

GOT DISTRIBUTION, LLC

By: *Glenford Carty*
      CECB66A97BB0441...
Name: Glenford Carty
Title: Managing Partner
      GOT Management, LLC

GOT DISTRIBUTION SPV, LLC
LIMITED LIABILITY COMPANY AGREEMENT

SCHEDULE A

MEMBER

| Member | LLC Interest |
|---|---|
| GOT Distribution, LLC<br>c/o Group of Telecom<br>1001 Brickell Bay Drive #1200<br>Miami, FL 33131 | 100% |

## Exhibit B

### Incumbency Certificate

| **Name** | **Office** | **Signature** |
|---|---|---|
| GOT Management, LLC | Manager | *Glenford Carty* |

**Exhibit C**

**Written Consent of the Board of Managers**

(see attached)

# WRITTEN CONSENT OF
# THE SOLE MANAGER OF
# GOT DISTRIBUTION SPV, LLC

November 5, 2021

The undersigned manager ("<u>Manager</u>") of GOT Distribution SPV, LLC, a Delaware limited liability company (the "<u>Company</u>"), in lieu of a meeting, the call, notice and holding of which are expressly waived, does hereby take the following actions and consents to, adopt and agrees to the following resolutions by written consent:

**PURCHASE AGREEMENT**

**WHEREAS**, the Company desires to enter into that certain Equity Purchase Agreement (the "<u>Purchase Agreement</u>"), by and among the Company, Brian and Eva Enterprises, Inc., an Illinois corporation, and Brian Vargyas to which the Company shall purchase the equity interests of Vargyas Networks LLC, a Delaware limited liability company (the "<u>Vargyas</u>"), as defined in the Purchase Agreement.

**WHEREAS**, capitalized terms used herein without definition shall have the meanings assigned thereto in the Purchase Agreement;

**WHEREAS**, in connection with the Purchase Agreement, the Company will enter into, among other instruments, certain ancillary agreements to which it is a party and the other agreements, letters, certificates and instruments executed and delivered in connection with the Purchase Agreement and the transactions contemplated thereby (the "<u>Acquisition Documents</u>");

**WHEREAS**, the Manager has determined that it is in the best interests of the Company to enter into the Purchase Agreement and the other Acquisition Documents to which the Company is a party and to take any other action contemplated thereby; and

**WHEREAS**, the Manager desires to approve, authorize, consent to, and direct certain actions to be taken relating to the Purchase Agreement and the other Acquisition Documents to which the Company is a party.

**NOW, THEREFORE, BE IT RESOLVED**, the Manager hereby authorizes, approves, consents to, and adopts the form, terms, and provisions of the Purchase Agreement and each other Acquisition Document to which the Company is a party, each substantially in the form presented to the Manager on or before the date hereof, with such additions, changes, and deletions thereto as the Company's officers, directors or other authorized persons, each of them acting alone (each an "<u>Authorized Officer</u>"), determine to be necessary or advisable (such determination to be conclusively, but not exclusively, evidenced by the execution thereof by any such Authorized Officer);

**FURTHER RESOLVED**, that the Company is hereby authorized to enter into the Purchase Agreement and each other Acquisition Document to which the Company is a party; and

**FURTHER RESOLVED**, that in connection with the Purchase Agreement and the other Acquisition Documents to which the Company is a party, the Company is hereby authorized to do such other acts and things, make such other agreements, and execute and deliver such other contracts, certificates, instruments, recordings, filings, writings, amendments, or undertakings as any Authorized Officer may deem necessary, advisable, or appropriate in connection with any of the foregoing in order to consummate

the transactions contemplated by the Purchase Agreement and the other Acquisition Documents, and to effectuate the purpose and intent of the foregoing resolutions.

**RATIFICATION OF PAST ACTIONS**

**RESOLVED**, that all prior lawful acts taken or caused to be taken by or on behalf of the Company by the Authorized Officers in connection with the transactions contemplated by this Consent or any recital or resolution hereof shall be, and they hereby are, confirmed, ratified, adopted, and approved as acts of the Company; and

**FURTHER RESOLVED**, that the omission from this Consent or any recital or resolution hereof of any agreement or other arrangement contemplated by any of the agreements or instruments described in this Consent or any recital or resolution hereof or any action to be taken in accordance with any requirement of any of the agreements or instruments described in this Consent or any recital or resolution hereof shall in no manner narrow the authority of any Authorized Officer to take all actions necessary, desirable, advisable, or appropriate to consummate, effectuate, carry out, or further the transactions contemplated by or in furtherance of this Consent or any recital or resolution hereof, or limit the ratification by the Manager of such agreement or other arrangement or action by any Authorized Officer.

**General Authority**

**RESOLVED**, that the officers of the Company be, and each hereby is, authorized and directed, in the name and on behalf of the Company, to take or cause to be taken all such further actions, in each case as such officers may determine to be necessary, appropriate or desirable in order to fulfill the intent and accomplish the purposes of the foregoing resolutions, such determination to be conclusively evidenced by the taking of any such further action; and

**FURTHER RESOLVED**, that the omission from the foregoing resolutions of any agreement or other arrangement contemplated by any of the agreements or instruments described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements or instruments described in the foregoing resolutions shall in no manner derogate from the authority of the officers, or any of them, to take all actions necessary, desirable, advisable or appropriate to consummate, effectuate, carry out or further the transactions contemplated by or in furtherance of any of the foregoing resolutions.

[SIGNATURE PAGE TO FOLLOW]

   IN WITNESS WHEREOF, the undersigned, being the sole Manager of GOT Distribution SPV, LLC, have executed this written consent as of the date first written above.

                GOT Management, LLC

                By: *Glenford Carty* (DocuSigned)
                Name: Glenford Carty
                Title: Managing Partner