Exhibit 8 to Defendant's 12(b)(1) Motion to Dismiss

Vinay Medhekar's October 28, 2021
GOT Distribution LLC Subscription Agreement

# SUBSCRIPTION AGREEMENT

This Subscription Agreement (this "Agreement") is made as of 10/28/2021 by and between GOT Distribution, LLC, a Delaware limited liability company (the "Company"), and the undersigned (the "Subscriber"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the LLC Agreement (as defined below).

## RECITALS

A. The Company has authorized the issuance to the Subscriber of an aggregate number of Class A-1 Common Units set forth on Exhibit A (collectively, the "Purchased Units").

B. On the terms and conditions set forth therein, the Company has agreed to issue to the Subscriber and the Subscriber has agreed to acquire from the Company the Purchased Units at the price set forth herein.

## AGREEMENT

In consideration of the foregoing, the parties hereto, intending to be legally bound, hereby agree as follows:

1. **Purchase and Issuance**. The Subscriber hereby purchases from the Company, and the Company hereby issues to the Subscriber, the Purchased Units, free and clear of all liens, claims and encumbrances, except those set forth in the LLC Agreement or as provided by applicable securities laws. The purchase price for the Purchased Units shall be $ ▮▮▮▮ per Purchased Unit, for an aggregate purchase price equal to the amount of the capital contribution set forth on Exhibit A (the "Aggregate Purchase Price"). The Subscriber shall pay the Aggregate Purchase Price to the Company on the date hereof, by wire transfer of immediately available funds to the account designated by the Company. The sale of the Purchased Units to the Subscriber hereunder is intended to be exempt from registration under the Securities Act pursuant to Rule 701 thereunder.

2. **LLC Agreement**. The Subscriber hereby agrees (a) to be bound by the Amended and Restated Limited Liability Company Agreement of the Company, dated as of even date herewith, by and among the Company, the Subscriber and the other members of the Company (as amended or modified from time to time, the "LLC Agreement"), and (b) that the Purchased Units shall be subject to the restrictions and obligations and shall have the benefits and rights applicable thereto contained in the LLC Agreement, including, without limitation, the restrictions on Transfer set forth in Article VII of the LLC Agreement. The Subscriber, its permitted transferees and legal representatives shall be bound by the LLC Agreement as a Member.

3. **Representations and Warranties**.

(a) **Representations and Warranties of the Company**. In connection with the sale of the Purchased Units hereunder, the Company represents and warrants to the Subscriber that:

(i) *Organization*. The Company is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and has all requisite limited liability company power and authority to own, lease and operate its property and to carry on its business as now being conducted.

(ii) *Authorization*. The Company has the requisite limited liability company power and authority and has taken all limited liability company or other action necessary to execute

and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by the Company of this Agreement, the consummation by it of the transactions contemplated hereby and the performance of its obligations hereunder have been duly authorized and approved by the managing member of the Company and no other limited liability company action is required to approve this Agreement. This Agreement has been duly executed and delivered by the Company. Assuming that this Agreement constitutes a valid and binding obligation of the Subscriber, this Agreement constitutes a valid and binding obligation of the Company, enforceable against the Company in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally, and by general equitable principles.

(iii) *No Conflict*. The execution and delivery of this Agreement do not, and the consummation of the transactions contemplated hereby will not, (A) conflict with any of the provisions of the Company's certificate of formation or the LLC Agreement, (B) contravene any of the terms any agreement or undertaking to which the Company is a party or to which any of its property is bound, or (C) contravene any law, order or regulation applicable to the Company.

(iv) *No Claims*. There is no action, proceeding, suit, at law or in equity, or any arbitration or administrative proceeding by or before any court or other governmental entity, pending, or, to the Company's knowledge, threatened, against the Company, or any of its respective properties that could reasonably be expected to impair the transactions contemplated hereby.

(v) *Issuance of Purchased Units*. The Purchased Units are duly authorized and are being delivered to the Subscriber free and clear of any liens, claims and encumbrances of any kind, except as set forth in the LLC Agreement or for applicable securities laws.

(b) <u>Representations and Warranties of the Subscriber</u>. In connection with the sale of the Purchased Units hereunder, the Subscriber represents and warrants to the Company that:

(i) *Organization*. Subscriber is an entity duly formed or incorporated, validly existing and in good standing under the laws of the state of its formation or incorporation and has all requisite limited liability company power and authority to own, lease and operate its property and to carry on its business as now being conducted.

(ii) *Authorization*. Subscriber has the requisite limited liability company power and authority and has taken all action necessary to execute and deliver this Agreement, to perform its obligations hereunder and to consummate the transactions contemplated hereby. The execution, delivery and performance by Subscriber of this Agreement, the consummation by it of the transactions contemplated hereby and the performance of its obligations hereunder have been duly authorized and approved by the Subscriber and no other action is required to approve this Agreement. This Agreement has been duly executed and delivered by Subscriber. Assuming that this Agreement constitutes a valid and binding obligation of the Company, this Agreement constitutes a valid and binding obligation of Subscriber, enforceable against Subscriber in accordance with its terms, except as such enforcement may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights generally, and by general equitable principles.

(iii) *No Conflict*. The execution and delivery of this Agreement do not, and the consummation of the transactions contemplated hereby will not, (A) conflict with any of the provisions of Subscriber's governing documents, (B) contravene any of the terms any agreement

2

or undertaking to which Subscriber is a party or to which any of its property is bound, or (C) contravene any law, order or regulation applicable to Subscriber.

(iv) *No Claims*. There is no action, proceeding, suit, at law or in equity, or any arbitration or administrative proceeding by or before any court or other governmental entity, pending, or, to Subscriber's knowledge, threatened, against Subscriber, or any of its respective properties that could reasonably be expected to impair the transactions contemplated hereby.

(v) *Purchased Units*. The Purchased Units are being acquired for Subscriber's own account and not with a view to, or intention of, distribution thereof in violation of the Securities Act, or any applicable state securities laws, and Subscriber will not dispose of the Purchased Units in contravention of the Securities Act or any applicable state securities laws. Subscriber acknowledges and agrees that the Purchased Units issued and acquired hereunder shall also be governed by, and have the terms, conditions, rights and obligations contained in, the LLC Agreement.

(vi) *Risks*. Subscriber is sophisticated in financial matters and is able to evaluate the risks and benefits of the investment in the Purchased Units. Subscriber is able to bear the economic risk of Subscriber's investment in the Purchased Units for an indefinite period of time because the Purchased Units have not been registered under the Securities Act and, therefore, cannot be sold unless subsequently registered under the Securities Act or an exemption from such registration is available.

(vii) *Review*. Subscriber and Subscriber's advisers have had an opportunity to ask questions and have received such answers concerning the terms and conditions of the offering of the Purchased Units as Subscriber and Subscriber's advisers have requested and have had full and free access and opportunity to inspect, review, examine and inquire about such other information concerning the Company as Subscriber and Subscriber's advisors have requested. Subscriber and Subscriber's advisers have also been provided an opportunity to review and ask questions about the LLC Agreement.

(viii) *Valuation*. Subscriber has had an opportunity to consult with independent legal counsel regarding Subscriber's rights and obligations under this Agreement and the LLC Agreement and fully understands the terms and conditions contained herein. Subscriber is not relying on the Company or any of its employees, agents or representatives with respect to the legal, tax, economic and related considerations of an investment in the Purchased Units. Subscriber understands that in the future the Purchased Units may significantly increase or decrease in value, and the Company has not made any representation to Subscriber about the potential future value of the Purchased Units.

4. Miscellaneous.

(a) Restrictions on Transfer. The Subscriber will not Transfer any interest in any Purchased Units, except as otherwise permitted (i) pursuant to the provisions hereof and (ii) pursuant to the LLC Agreement.

(b) Assignment. This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors, permitted assigns, heirs and representatives; provided, however, that neither the Company nor the Subscriber may assign any of its rights hereunder without the prior written consent of the other party.

3

(c) <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and all of which together shall be deemed to be one and the same instrument. Signed counterparts of this Agreement may be delivered by facsimile or by portable document format (.pdf) image and shall be deemed originals for all purposes hereunder.

(d) <u>Headings</u>. The headings contained in this Agreement are included for convenience of reference and do not affect the meaning or interpretation of this Agreement.

(e) <u>Severability</u>. If any term or provision contained herein is held by a court of competent jurisdiction or other authority to be illegal, void, unenforceable, invalid or against its public policy, the remainder of the terms and provisions contained herein shall remain in full force and effect and shall in no way be affected or impaired, and this Agreement shall be reformed, construed and enforced in such jurisdiction as if such illegal, unenforceable or invalid term or provision or any portion thereof had never been part of this Agreement.

(f) <u>Complete Agreement</u>. This Agreement and the LLC Agreement embody the complete agreement and understanding among the parties and supersede and preempt and prior understandings, agreement, or representations by or among the parties, written or oral, which may have related to the subject matter hereof in any way.

(g) <u>Survival; Remedies</u>. The representations and warranties set forth in this Agreement shall survive the purchase of the Purchased Units. Each of the parties to this Agreement will be entitled to enforce its rights under this Agreement specifically, to recover damages and costs (including reasonable attorney's fees) caused by any breach of any provision of this Agreement and to exercise all other rights existing in its favor. The parties hereto agree and acknowledge that money damages may not be an adequate remedy for any breach of the provisions of this Agreement and that any party may in its sole discretion apply to any court of law or equity of competent jurisdiction for specific performance and/or other injunctive relief in order to enforce any violations of the provisions of this Agreement.

(h) <u>Amendment and Waiver</u>. The provisions of this Agreement may be amended and waived only with the prior written consent of the Company and the Subscriber.

(i) <u>Notices, Etc</u>. All notices and other communications required or permitted hereunder shall be in writing and shall be deemed effectively given (a) upon personal delivery or receipt (which may be evidenced by a return receipt if sent by registered mail or by signature if delivered by courier or delivery service) or (b) when transmitted via telecopy (or other facsimile device) or electronic mail to the number or address, as applicable, set out below if the sender on the same day sends a confirming copy of such notice by a recognized overnight delivery service (charges prepaid), addressed (i) if to the Subscriber, at the address set forth on the signature page hereto, and (ii) if to the Company, at:

> GOT Distribution, LLC
> c/o GOT Mgmt Co, LLC
> 1001 Brickell Bay Drive #2719
> Miami, FL 33131
> Attention: Glenford Carty
> E-mail: <u>glen.carty@groupoftelecom.com</u>
>
> <u>with a copy to</u>:

> McGuireWoods LLP
> 2000 McKinney Ave., Suite 1400
> Dallas, TX 75201
> Attention: Jon Finger
> Telephone: 214 932 6404
> Facsimile: 214 932 6499
> Email: jfinger@mcguirewoods.com

(j) <u>Applicable Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Delaware or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware. Any dispute relating hereto shall be heard in the state or federal courts of Delaware, and the parties agree to jurisdiction and venue therein.

(k) <u>MUTUAL WAIVER OF JURY TRIAL</u>. BECAUSE DISPUTES ARISING IN CONNECTION WITH COMPLEX TRANSACTIONS ARE MOST QUICKLY AND ECONOMICALLY RESOLVED BY AN EXPERIENCED AND EXPERT PERSON AND THE PARTIES WISH APPLICABLE STATE AND FEDERAL LAWS TO APPLY (RATHER THAN ARBITRATION RULES), THE PARTIES DESIRE THAT THEIR DISPUTES BE RESOLVED BY A JUDGE APPLYING SUCH APPLICABLE LAWS. THEREFORE, TO ACHIEVE THE BEST COMBINATION OF THE BENEFITS OF THE JUDICIAL SYSTEM AND OF ARBITRATION, EACH PARTY TO THIS AGREEMENT HEREBY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT, OR PROCEEDING BROUGHT TO RESOLVE ANY DISPUTE BETWEEN OR AMONG ANY OF THE PARTIES HERETO, WHETHER ARISING IN CONTRACT, TORT, OR OTHERWISE, ARISING OUT OF, CONNECTED WITH, RELATED OR INCIDENTAL TO THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED HEREBY AND/OR THE RELATIONSHIP ESTABLISHED AMONG THE PARTIES HEREUNDER.

(l) <u>Construction</u>. References herein to this Agreement and any other agreement shall be references to such agreement, as amended, modified, supplemented or waived from time to time.

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound by the terms hereof, have caused this Agreement to be executed as of the date first above written by their officers or other representatives thereunto duly authorized.

**THE COMPANY:**

GOT DISTRIBUTION, LLC

By: *Glenford Carty* (DocuSigned)
Name: Glenford R. Carty Jr.
Title: President

**SUBSCRIBER:**

By: *Vinay Medhekar* (DocuSigned)
Name: Vinay Medhekar
Title: Innovation Lead

Notice Address of the Subscriber:

3599 Grayson Ln

Beaumont TX 77713

USA

vmedhekar@gmail.com

*Signature Page to Subscription Agreement*

**Exhibit A**

| Class A-1 Common Units | Capital Contribution |
|---|---|
| ▮ | ▮ |